**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 7 |
|  | ) |  |
| MATTHEW W. PARET, | ) | Case No. 06-10272 (MFW) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### **MEMORANDUM OPINION**[1]

Before the Court is the Motion of the United States Trustee ("the UST") to dismiss the Debtor's chapter 7 case based upon the totality of the Debtor's financial circumstances. The Debtor opposes the motion. For the reasons outlined below, the Court concludes that the totality of the Debtor's financial circumstances (including the Debtor's ability to repay his debts) is the applicable standard. Having determined the legal standard, the Court will schedule an evidentiary hearing on that issue.[2]

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

[2] At the initial hearing, the UST offered into evidence the Debtor's schedules, which it argues proves that the Debtor has almost $875 per month in excess income from which he can repay his creditors in full under a five-year plan. In his reply brief, the Debtor submitted an affidavit putting at issue his employment history and prospects for continued employment. The UST opposes the Court's consideration of the Debtor's affidavit because the Debtor failed to appear at the hearing and the UST was unable to cross-examine. Accordingly, the Court will schedule an evidentiary hearing to address these disputed facts.

I.  BACKGROUND

Matthew J. Paret ("the Debtor") owes $43,938 in nonpriority unsecured claims, the bulk of which are credit card debts. On March 22, 2006, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On April 19, 2006, the UST filed a motion to dismiss the Debtor's case under section 707(b)(1). 11 U.S.C. § 707(b)(1). In a response filed May 4, 2006, the Debtor asserted that the "totality of the circumstances" test under section 707(b)(3) does not apply and that the Debtor's ability to pay creditors is not relevant because his income falls below the median income level under section 707(b)(7). The parties have briefed the issue, and the matter is ripe for decision.

II.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A) & (O).

III. DISCUSSION

The UST asserts that the Debtor's filing under chapter 7 constitutes an abuse of the provisions of the Code, because the Debtor has the ability to repay his creditors in full in fewer than sixty months. The Debtor argues, however, that because his income falls below the relevant median income level, he is deemed

2

not to have the ability to pay under section 707(b)(7). Essentially, the Debtor claims that paragraphs (b)(2) and (b)(7) constitute the only provisions of section 707(b) that address a debtor's ability to pay. Any inquiry under paragraph (b)(3), argues the Debtor, cannot include the Debtor's ability to pay his creditors.

    A.   <u>Section 707(b)</u>

Section 707(b)(1) provides that "a court . . . may dismiss a case if it finds that the granting of relief would be an abuse of the provisions of this chapter." In paragraph (b)(2) is outlined the "means test," perhaps the most noteworthy feature of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). When the means test is triggered, a presumption of abuse arises that can only be rebutted by a debtor on a showing of "special circumstances." Paragraph (b)(3) states that "in considering under paragraph (1) whether the granting of relief would be an abuse in a case in which the presumption in subparagraph (A)(i) of such paragraph[3] does not arise or is rebutted, the court shall consider whether the debtor filed his petition in bad faith or whether the totality of the circumstances of the debtor's financial situation demonstrates abuse."

---

[3] It appears that Congress actually meant to refer to subsection (A)(i) of paragraph (2); there is no subsection (A)(i) of paragraph (1).

Paragraph (b)(7), on which the Debtor relies, provides that "no judge, United States trustee, . . . trustee, or any other party in interest may file a motion under paragraph (2) if the current monthly income of the debtor is equal to or less than (i) the median family income of the applicable State." This "safe harbor" provision prevents all parties, including the UST and the Court,[4] from moving to dismiss a chapter 7 case based on a presumption of abuse resulting from the application of the means test outlined in paragraph (b)(2). If no one can file a motion under section 707(b)(2) and the Court cannot presume abuse sua sponte, no presumption of abuse can arise.

Even where no presumption of abuse arises under section 707(b)(2), however, the Court must still determine under paragraph (b)(1) whether the granting of relief under chapter 7 would constitute an abuse. Dismissal under paragraph (b)(1) depends on the guidelines established by Congress in paragraph (b)(3), namely fraud or the totality of the circumstances.

The Debtor argues that dismissal based on "the totality of the circumstances of the debtor's financial situation" set forth in paragraph (b)(3) cannot include a debtor's ability to pay as a factor. Ability to pay, argues the Debtor, has been subsumed

---

[4] Of course, no Bankruptcy Judge "files motions" in proceedings before her. It appears the intent of Congress in drafting paragraph (b)(7) was to preclude the Court from sua sponte applying the means test and dismissing a failing debtor's case.

4

post-BAPCPA under paragraphs (b)(2) and (b)(7).  The Debtor contends that the totality of the circumstances test should be limited to prevent the granting of relief under chapter 7 to debtors who file serial bankruptcies, load up on secured debt or manipulate their current monthly income to pass the means test.

The UST asserts that consideration of the totality of the circumstances test in paragraph (b)(3) includes determining the Debtor's ability to repay his creditors.  The UST refers to pre-BAPCPA cases that interpreted a similar test under former section 707(b).  See, e.g., In re Roth, 108 B.R. 78, 81 (Bankr. W.D. Pa. 1989).

    B.   Explicit Language of the Statute

"It is axiomatic that statutory interpretation begins with the language of the statute itself."  Virgin Islands v. Knight, 989 F.2d 619, 633 (3d Cir. 1993).  A statutory language analysis must precede any resort to legislative history or case law as "there is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."  United States v. Am. Trucking Ass'ns, 310 U.S. 534, 543 (1930).  Where a statute's language is plain, the court's function is to enforce the statute according to its terms.  See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (citation omitted).

Paragraph (b)(3) explicitly mandates[5] that the totality of the circumstances of the Debtor's financial situation be considered in determining whether there is an abuse when the presumption of abuse under paragraph (b)(2) does not arise or is rebutted.[6] There is nothing in the language of section 707 to suggest that the test in paragraph (b)(3) is less than "total" if a debtor's income falls below the median income level in paragraph (b)(7).

The Debtor argues nonetheless that paragraphs (b)(2) and (b)(7) already test the Debtor's ability to pay his creditors. Because paragraph (b)(7) is applicable here, the Debtor asserts that the Court must conclude he is not able to pay his creditors.

The Court disagrees with the Debtor's argument. Under the Debtor's theory, if a debtor's income were to fall below the median income level, no motion to dismiss based on ability to pay could be brought. That is not what paragraph (b)(7) states. Rather, it simply precludes any presumption of abuse from arising under paragraph (b)(2). No presumption of abuse does not mean

---

[5] Section 707(b)(3) states "the court shall consider . . . the totality of the circumstances."

[6] Also of note is that Congress did explicitly limit the exercise of the Court's discretion in granting motions to dismiss under paragraph (b)(1): the Court may not consider any charitable contributions made by a debtor. This provision suggests that Congress knew how to exclude factors and chose not to exclude a debtor's ability to pay his creditors from consideration under paragraph (b)(3).

there is no abuse.  Section 707(b)(7) makes no reference, or changes, to paragraph (b)(3).

Also unpersuasive is the Debtor's argument that the UST is trying to "bypass" the safe harbor outlined in paragraph (b)(7). The UST's motion to dismiss is based on paragraph (b)(3) and, therefore, does not skirt paragraph (b)(7)'s prohibition on motions to dismiss under paragraph (b)(2).  Debtors within the protection of paragraph (b)(7) are only safe from a presumption of abuse that might otherwise arise under paragraph (b)(2) and are not beyond the reach of paragraph (b)(3)'s comprehensive, statutorily-mandated inquiry into their fitness for chapter 7 relief.

As is manifest in section 707, a safe harbor upon entry into which neither one's motives nor fitness for chapter 7 relief are questioned is hardly one Congress sought to dredge.  When no presumption of abuse arises under paragraph (b)(2), the Court concludes that the Code mandates consideration of a debtor's ability to pay his creditors within the test articulated in paragraph (b)(3).  <u>Accord</u> <u>In re Pak</u>, 343 B.R. 239, 244 (Bankr. N.D. Cal. 2006).

 C. <u>Statutory Construction</u>

The Debtor argues that the rules of statutory construction support his contention that ability to pay may not be considered under paragraph (b)(3) because his income falls below the median

income level in paragraph (b)(7).  The Debtor cites the proposition that "it is a commonplace of statutory construction that the specific govern the general."  See Morales v. Trans World Airlines, Inc., 540 U.S. 374, 384 (1992).  Paragraphs (b)(2) and (b)(7), argues the Debtor, are more specific determinants of one's ability to pay than the general provisions of paragraph (b)(3).  See Marianne B. Culhane and Michaela M. White, Catching Can-Pay Debtors: Is the Means Test the Only Way?, 13 Am. Bankr. Inst. L. Rev. 665, 678-80 (2005).

The Court concludes, however, that paragraph (b)(7)'s safe harbor provision does not conclusively determine that the Debtor is unable to pay his creditors.  For example, a debtor with an adjusted annual income one dollar below the median income level may nonetheless have the ability to repay trivial debts.  Therefore, the Court cannot conclude that paragraph (b)(7) is the more specific provision on this point.  Pak, 343 B.R. at 243 (holding that for below-median income level debtor, there is no more specific provision on ability to pay than section 707(b)(3)).  See also Eugene Wedoff, Means Testing in the New 707(b), 79 Am Bankr. L.J. 231 (2005) (concluding that passing means test does not preclude finding of abuse under section 707(b)(3) based on ability to pay).

D.  Congressional Intent

The Debtor also argues that dismissal of his case based on ability to pay is contrary to the intent of Congress in passing the BAPCPA amendments to the Bankruptcy Code.  He cites several statements from Congressmen during the debates on BAPCPA that the Act will not bar debtors with below-median income from filing chapter 7 cases.

While the plain language of the statute is sufficiently clear that an inquiry into the intent of Congress is not warranted, the Court concludes that the Debtor's method of discerning Congressional intent and the conclusions he draws are misguided.  The Debtor attempts to discern Congressional intent from an assortment of statements made by individual legislators.  The Supreme Court has stated, however, that "[i]n surveying legislative history . . . the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.'. . .  We have eschewed reliance on the passing comments of one member . . . and casual statements from the floor debates."  Garcia v. United States, 469 U.S. 70, 76 (1984) (internal citations omitted).

In fact, the Committee Reports on BAPCPA unequivocally indicate Congress' intent that the Court consider a debtor's

9

ability to pay his creditors under paragraph (b)(3), even where the safe harbor provision of paragraph (b)(7) operates to prevent a presumption of abuse from arising under paragraph (b)(2).  See Bankruptcy Reform Act of 2000 – Conference Report, 146 Cong. Rec. S11683-02, S11703.

> Dismissal under 707(b) is also authorized when there is "abuse."  It is intended that by changing the standard for dismissal from "substantial abuse" to "abuse," stronger controls will be available . . . to limit the abusive use of Chapter 7 based on a wide range of circumstances.  The "bad faith" and "totality of the circumstances" of the debtor's situation is adopted as an appropriate standard.  It is intended that all forms of inappropriate and abusive debtor use of Chapter 7 will be covered by this standard, whether because of the debtor's conduct or the debtor's ability to pay. . . .  Cases which have decided that a debtor's ability to pay should not be considered when determining abuse, or can be outweighed if the debtor is otherwise acting in good faith, are intended to be overruled.  <u>In dealing with ability to pay cases which are abusive, the presumption of abuse and the safe harbor protecting debtors from application of the presumption will not be relevant.</u>

Id. (emphasis added).

In fact, the Debtor admits that the means test is not an accurate indicator of a debtor's ability to pay.  See, e.g., In re Walker, 2006 WL 1314125, at *13 (Bankr. N.D. Ga. 2006) ("Section 707(b)'s presumption of abuse was not intended to and does not produce the most accurate prediction of the debtor's actual ability to fund a Chapter 13 plan.").  The Walker Court noted that "whether the debtor passes or fails the means test is relevant only to the question of whether the U.S. Trustee will

benefit from a presumption of abuse. In cases in which the presumption of abuse does not arise or is rebutted, the U.S. Trustee may pursue dismissal of a debtor's case under section 707(b)(3)." Id. at 17.

The Court agrees and concludes that, even where application of the means test or paragraph (b)(7)'s safe harbor provision prevents a presumption of abuse from arising, section 707(b)(3) requires the Court to consider the Debtor's ability to pay his creditors.

Thus, the Court will consider the totality of the circumstances of the Debtor's financial situation, including the Debtor's ability to pay his creditors, in considering the Trustee's motion to dismiss under section 707(b)(1) and (3).

IV. CONCLUSION

The Court concludes that, where the safe harbor of section 707(b)(7) applies and no presumption of abuse arises under section 707(b)(2), the Court nonetheless must determine if the Debtor's case is an abuse under section 707(b)(3). The Court further concludes that the totality of the circumstances test under section 707(b)(3) includes consideration of the Debtor's ability to repay his creditors. The Court will schedule a further hearing to consider the motion to dismiss in light of the Court's ruling.

An appropriate order is attached.

BY THE COURT:

Dated: August 1, 2006

*Mary F. Walrath*
Mary F. Walrath
United States Bankruptcy Judge